**Bonner Kiernan Trebach & Crociata, LLP**
**Empire State Building**
**Suite 3304**
**New York, NY 10118**
**Counsel for Defendant, Atlantic Video, Inc.**

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **RITA RAGONE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.: 07:CV:6084** |
| ) | |
| **ATLANTIC VIDEO, INC., improperly** ) | |
| **identified as "Atlantic Video at the** ) | |
| **Manhattan Center, d/b/a MCP-AV, Inc.",** ) | |
| **ESPN, INC., WOODY PAIGE,** ) | |
| **JAY CRAWFORD,** ) | |
| **TED NELSON and LORI BERLIN,** ) | |
| ) | |
| **Defendants.** ) | |

---------------------------------------------------------------

### MEMORANDUM OF LAW IN SUPPORT OF
### ATLANTIC VIDEO, INC.'S MOTION TO DISMISS THE COMPLAINT
### AND TO COMPEL ARBITRATION

## I.    PRELIMINARY STATEMENT

Defendant Atlantic Video Inc. ("AVI"), incorrectly sued herein as "Atlantic Video at the

Manhattan Center, d/b/a MCP-AV, Inc.", is a broadcast and film production and post production

company, located in Washington, D.C. (See, Complaint, ¶ 2). AVI respectfully moves this Court

for an Order pursuant to Fed. R. Civ. P. 12(b)(6), and the Federal Arbitration Act, 9 U. S.C. § 3,

4, and respectfully moves this Court for entry of an order: (1) dismissing this action because all

claims contained in the Complaint are subject to arbitration under a valid arbitration agreement

and, therefore, the complaint fails to state a cause of action; and (2) compelling Plaintiff, Rita

Ragone, ("Ragone" or "Plaintiff") to arbitrate the claims asserted in her Complaint pursuant to the arbitration agreement she entered into with AVI. (the "Agreement").

Plaintiff is a former employee of AVI, having been employed by AVI from on or about February 28, 2005 until on or about April 11, 2005. (See, Complaint, ¶ 11). On February 22, 2005, Plaintiff signed an agreement with AVI in which she expressly agreed to arbitrate "any and all claims and controversies arising out of [her] employment or its termination including but not limited to, claims concerning…discrimination…sexual harassment; and claims for violation of any federal, state or local government law…" (See, Exhibit 1, ¶ 4).

In disregard of her Arbitration Agreement (hereinafter, the "Agreement"), Plaintiff filed the instant action, purporting to assert claims relating to her employment with AVI including the following: (1) hostile work environment in violation of Title VII; (1) retaliation in violation of Title VII; (3) retaliatory discharge in violation of Title VII; (4) hostile work environment in violation of the New York State Human Rights Law; (5) retaliation in violation of the New York State Human Rights Law; and (6) retaliatory discharge in violation of the New York State Human Rights Law.[1] The purported claims asserted by Plaintiff in her Complaint are plainly within the scope of the Agreement's broad arbitration provision and its express coverage of "claims and controversies arising out of [her] employment or its termination," involving "discrimination…sexual harassment; and claims for violation of any federal, state or local government law…" Accordingly, those claims must be litigated in arbitration – and only in arbitration – pursuant to her Agreement. *Id.* Based on the foregoing, the Court should dismiss the complaint and compel Plaintiff to arbitrate her claims in accordance with the terms of her Agreement.

---

[1] Plaintiff's Complaint also includes a claim for "Aider and Abettor Liability in Violation of the New York City Human Rights Law." However, that claim, as alleged, is not against AVI.

179123-1

## II.    RELEVANT FACTS

### A.    <u>Background and Plaintiff's Arbitration Agreement.</u>

Plaintiff's claims arise out of her employment as a makeup artist for AVI on the "Cold Pizza"

cable television program.  (See, Complaint, ¶¶ 11, 13-14).  The "Cold Pizza" program aired on

ESPN2 and was taped live from AVI's studio at the Manhattan Center in New York, New York.

(See, Complaint, ¶ 14).  The final edition of "Cold Pizza" aired on May 4, 2007.  (See, Complaint, ¶

15).  AVI is a business entity involved in broadcasting television programs throughout the United

States.  (See Exhibit 1, ¶ 2).

Plaintiff worked for AVI from on or about February 28, 2005 until on or about April 11,

2005.  (See, Complaint, ¶ 11).  On February 22, 2005, Plaintiff entered into an Arbitration

Agreement with AVI.  (See Exhibit 1).  Paragraph 1 of that Agreement provides for binding

arbitration for a broadly defined scope of claims:

> 1.    [Ragone] shall submit to the American Arbitration Association ("AAA") for final and binding arbitration by one arbitrator under the AAA's Employment Arbitration Rules (as modified), any and all claims or controversies arising out of my employment or its termination including, but not limited to, claims or concerning discipline and discharge, claims for breach of any contract, or covenant, whether express or implied; tort claims; claims for discrimination (including but not limited to race, color, sex, sexual orientation or preference, religion, national origin, age, marital status); claims of sexual harassment; and claims for violation of any federal, state, or local government law, statute, and/or ordinance.  The foregoing claims are hereinafter referred to as "Claims".

(See, Exhibit 1, ¶ 1)

.

179123-1

## III.    ARGUMENT

## THIS ACTION SHOULD BE DISMISSED AND RAGONE SHOULD BE COMPELLED TO ARBITRATE ALL OF HER CLAIMS BECAUSE THE FEDERAL ARBITRATION ACT REQUIRES THE ARBITRATION OF THIS DISPUTE.

### A. This Dispute Is Governed By The Federal Arbitration Act Because It Is A Contract That Involves Interstate Commerce.

The Federal Arbitration Act, ("FAA"), 9 U.S.C. § 1 *et seq*., applies to all contracts involving interstate commerce. The term "involving interstate commerce" is construed broadly. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995). *See also Acequip, Ltd. V. American Engineering Corp.*, 315 F.3d 151, 154 (2d Cir. 2003).

As the Supreme Court has held, "the control over interstate commerce . . . reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967). Where an employer's business is national in scope, the FAA will govern disputes about arbitrability.    *See*, *e.g.*, *Garten v. Kurth*, 265 F.3d 136, 142 (2d Cir. 2001)(holding that construction contract at issue was governed by the FAA where contractors did business in multiple states and project involved materials and labor in interstate commerce); *Graphic Scanning Corp. v. Yampol*, 850 F.2d 131, 133 (2d Cir. 1988) (concluding that FAA applies where employer operated in several states); *Imclone Sys. v. Waksal*, 22 A.D.3d 387, 387-88, 802 N.Y.S.2d 653, 654 (1st Dep't 2005) (holding that where employer is federally regulated and its products are distributed nationally, its activities have an effect on interstate commerce; "[t]he parties' residence and negotiation of the agreement in New York and the lack of a substantial effect on interstate commerce *do not require* the conclusion that the FAA does not govern") (emphasis added).

179123-1

The Agreement at issue here is undoubtedly within the scope of the FAA. Indeed, AVI's business – broadcasting television shoes throughout the United States – plainly involves interstate commerce. Courts have uniformly found that distributors of interstate television programs are engaged in interstate commerce: "[even] distribution within [a State] of interstate programming to the television-watching 'public is an inseparable part of the flow of the interstate commerce involved.'" *Aventura Cable Corp. v. Rifkin/Narragansett S. Fla. CATV Ltd. P'ship*, 941 F. Supp. 1189, 1192 (S.D. Fla. 1996) (*citing Lorain Journal Co. v. United States*, 342 U.S. 143, 151 (1951)); *see also Viacom Int'l Inc. v. Tandem Prods., Inc.*, 368 F. Supp. 1264, 1276 (S.D.N.Y. 1974) (CBS television network is engaged in interstate commerce), *aff'd*, 526 F.2d 593 (2d Cir. 1975); *People v. Eller Telecasting Co.*, 13 Cal. App. 3d 296, 298-300 (4th Dist. 1970) (television stations are engaged in interstate commerce).    In fact, not only does a television broadcast involve interstate commerce, it is by definition a "channel of interstate commerce." *See, e.g., Gibbs v. Babbitt*, 214 F.3d 483, 490-91 (4th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001); *United States v. Miles*, 122 F.3d 235, 245 (5th Cir. 1997) (*citing United States v. Lopez*, 514 U.S. 549, 559 (1995)).[2] *Accord United States v. Columbia Pictures Indus., Inc.*, 507 F. Supp. 412, 417 (S.D.N.Y. 1980) (motion picture companies that make and distribute films and derive revenue from television distribution are engaged in interstate commerce).

Further, it is well-settled that the FAA applies to agreements such as Plaintiff's Agreement. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *see also Fletcher* 81 N.Y.2d at 638, 601 N.Y.S.2d at 693 (holding that arbitration clause in an employment contract "is within the class of agreements that are governed by the FAA"); *DiBello v. Salkowitz*, 4

---

[2]    Congress has clearly indicated that the television industry involves interstate commerce. The Federal Communications Act was adopted for the stated purpose of regulating interstate commerce in communications by wire and by radio, which includes television, to advance nationwide communications. Federal Communications Act, 47 U.S.C. § 301 *et seq.*

179123-1

A.D.3d 230, 232, 772 N.Y.S.2d 663, 665 (1st Dep't 2004) (finding that arbitration clause in a

personal services agreement is governed by the FAA); *Oldroyd v. Elmira Sav. Bank*, 134 F.3d

72, 75 (2d Cir. 1998)(requiring enforcement of privately negotiated agreements to arbitrate and

finding that any arbitration agreement affecting interstate commerce is subject to the FAA); *In re*

*AYCO Co.*, 3 A.D.3d 635, 636, 770 N.Y.S.2d 453, 455 (3d Dep't) (concluding that "[t]he FAA

applies to any contracts involving interstate commerce . . . including employment contracts other

than those involving federal transportation workers"), *appeal dismissed*, 2 N.Y.3d 786, 780

N.Y.S.2d 308 (2004) .

### B. The FAA Requires The Arbitration Of The Claims Asserted In Plaintiff's Complaint.

A motion to compel arbitration is governed by Section 4 of the FAA, which provides that

"[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a

written agreement for arbitration may petition any United States district court . . . for an order

directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C.

§ 4.    *See also Crabtree v. Tristar Automotive Group, Inc.,* 776 F.Supp. 155 (S.D.N.Y

1991)(holding that under 9 U.S.C. § 4 courts should direct the parties to proceed to arbitration in

accordance with the agreement if there is no dispute concerning the making of the agreement or

the failure to comply with it).  The FAA, and the strong federal policy favoring arbitration that it

embodies, requires courts to "rigorously enforce agreements to arbitrate."  *Mitsubishi Motors*

*Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Dean Witter Reynolds*

*v. Byrd*, 470 U.S. 213, 219 (1985)(holding that a Court must compel arbitration of otherwise

arbitrable claims, when a motion to compel arbitration is made).  Indeed, the U.S. Supreme Court

has found that "Congress declared a national policy favoring arbitration and withdrew the power

179123-1

of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corporation v.* Keating, 465 U.S. 1, 10 (1984).

When a litigant in a court proceeding refuses to arbitrate a dispute within the scope of a valid arbitration agreement, a judicial order compelling arbitration is mandatory. *See* 9 U.S.C. § 4; *see also Dean Witter*, 470 U.S. at 217 (holding that the FAA leaves no room for the exercise of discretion and mandates that courts direct the parties to proceed to arbitration on issues within the scope of an arbitration agreement); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) ("[Section] 4 of the Act *directs* a federal court to order parties to proceed to arbitration if there has been a 'failure, neglect, or refusal' of any party to honor an agreement to arbitrate") (emphasis added).

Further, the U. S. Supreme Court has made clear that courts should construe arbitration clauses as broadly as possible, and the FAA establishes that as a matter of federal law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The exacting application and broad construction of arbitration agreements dictate that, "[i]f the allegations underlying the claims 'touch matters' covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). Thus, a broad arbitration clause creates a presumption of arbitrability which can be overcome only if it "may be said with positive assurance that the arbitration clause is not susceptible to the interpretation that it covers the asserted dispute." *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 653 (1986);

*see also Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998); *S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194-95 (2d Cir. 1984); *Wire Service Guild v. United Press Int'l, Inc.*, 623 F.2d 257, 260 (2d Cir. 1980); *Int'l Ass'n of Machinists & Aerospace Workers v. Gen. Elec. Co.*, 406 F.2d 1046, 1048 (2d Cir. 1969).

In deciding a motion to compel arbitration, courts consider, through the lens of the "emphatic national policy favoring arbitration," whether the parties have agreed to arbitrate their disputes, whether the scope of that agreement encompasses the plaintiff's claims, and whether the legislature intended a statutory claim to be non-arbitrable.[3] *See Genesco v. T. Kakuuchi & Co., Ltd.,* 815 F.2D 840, 844 (2D Cir. 1987)  As set forth below, application of these factors clearly requires that plaintiff's complaint be dismissed and that she be compelled to arbitration.

> i. **Ragone Entered Into A Valid And Enforceable Agreement To Arbitrate.**

The FAA provides that "a written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be *valid, irrevocable, and enforceable*, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added); *see also Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 111-12 (2001); *Gilmer*, 500 U.S. at 24-25.

Plaintiff has unquestionably entered into just such a valid, unconditional and enforceable written agreement to arbitrate the very same claims she purports to bring before this Court, as evidenced by Paragraph 1 of the Agreement, and she has clearly agreed that arbitration shall be the only forum to resolve such claims:

---

[3]    The party seeking to avoid enforcement of an arbitration clause governed by the FAA must demonstrate a congressional intent 'to preclude a waiver of a judicial forum' for disputes based on a particular statutory right." *See, Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

5.      [Ragone] understand[s], acknowledge[s], and agree[s] that [AVI's dispute resolution] Procedure bars litigation in any court for any claim that may be arbitrated under the Procedure. [Ragone] knowingly waive[d] any and all rights to trial by jury or judge of any claim either expressly or impliedly referenced in the Agreement.

(See, Exhibit 1, ¶ 5).

### ii.  **The Agreement To Arbitrate Encompasses The Claims In The Complaint.**

The claims in the Complaint are clearly within the scope of Plaintiff's Agreement and the mandate of the FAA. The FAA was adopted to ensure enforcement of private agreements to arbitrate and establishes an "emphatic" national policy favoring arbitration which is binding on all courts, State and Federal." *See, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). Doubts as to the arbitrability of a claim are resolved in favor of arbitrability, and arbitration must be ordered "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 650 (emphasis added). When a party to a valid arbitration agreement asserts claims in a judicial forum which fall within the scope of the agreement, as Plaintiff's claims do, the FAA requires the court to compel arbitration. 9 U.S.C. §§ 3, 4; *Shearson/American Express v. McMahon*, 482 U.S. 220, 226 (1987); *Dean Witter Reynolds*, 470 U.S. 213, 217-18 (1985); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974).

As a threshold matter, plaintiff's Agreement contains "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability." *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000), *cert. denied*, 533 U.S. 911 (2001) (characterizing similar clause providing for arbitration of "any controversy or claim between [the parties] arising out of or relating to the Agreement" as broad); *Elwel v. Google, Inc.*, 2006 WL 217978 at 1, 4 (S.D.N.Y

9

179123-1

Jan. 30, 2006)(holding that "any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration" is an "undoubtedly broad" arbitration clause that encompasses federal and state employment discrimination claims).

As this Court and the U.S. Supreme Court have acknowledged, federal employment discrimination claims are generally arbitrable. See, *Cronas v. Willis Group Holdings, Ltd.*, 2007 WL 2739769 (S.D.N.Y Sept. 17, 2007), citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35 (1991)(ADEA claims arbitrable); *Elwell v. Google, Inc.*, 2006 WL 217978 at 4 (S.D.N.Y Jan 30, 2006)(Title VII claims based on gender discrimination and retaliation arbitrable and it is well-settled that federal statutory discrimination claims are arbitrable under the FAA); *Maye v. Smith Barney*, Inc. 897 F.Supp. 100, 109-10 (S.D.N.Y 1995)(Title VII claims based on sexual harassment arbitrable)(citations omitted).[4]

Here, the Agreement provides for "final and binding arbitration " for the claims alleged by Plaintiff. It is beyond dispute that the gravamen of Plaintiff's Complaint here – sexual harassment discrimination and retaliation – clearly falls within the scope of this arbitration clause. Even if the arbitration provision were ambiguous in scope, which it is not in this case,

---

[4]     The New York State Court of Appeals has also made explicitly clear, "there is nothing in the language or history of the relevant Federal statutes to indicate a congressional intent to foreclose arbitration of race and gender discrimination claims." *Fletcher*, 81 N.Y.2d at 636, 601 N.Y.S.2d at 693. Indeed, New York courts have routinely held that statutory employment discrimination claims can be compelled to arbitration. *See, e.g., id.* at 638, 601 N.Y.S.2d at 694 (holding that "arbitration agreement is fully enforceable in disputes that fall within its terms, even where the underlying claim concerns an alleged breach of a local, State or Federal law barring racial or gender discrimination"); *DiBello* 4 A.D.3d at 232, 772 N.Y.S.2d at 665 (concluding that "the enforceability of [an] arbitration agreement is not affected by the statutory nature of the discrimination claims"); *So. Huntington Jewish Ctr. v. Heyman*, 282 A.D.2d 684, 685, 723 N.Y.S.2d 511, 512-13 (2d Dep't 2001) (holding that arbitration clause in plaintiff's employment contract encompasses his claims of statutory employment discrimination); *Nelsen v. Colleary*, 152 Misc. 2d 81, 82-83, 574 N.Y.S.2d 912, 913-14 (Sup. Ct. 1991) (granting motion to compel arbitration of plaintiff's claims of sexual harassment in alleged violation of the New York State Human Rights Law because those claims "directly involved 'significant aspects' of plaintiff's employment and her employer's business activities") (citation omitted).

179123-1

"due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. Of Trustees of Leland Stanford Junior Univ.*, 489   U.S. 468, 475-76 (1989)(citation omitted)   In this case, it cannot be said that the arbitration clause does not encompass Plaintiff's claims and arbitration is properly compelled for this action. *Id.*

Because all of plaintiff's claims fall within the scope of the arbitration provision contained in her Agreement, this Court's role is at an end. The FAA requires that this Court dismiss the complaint and compel arbitration of the dispute. *See Rubin v. Sona Int'l Corp.*, 457 F.Supp. 191, 198 (S.D.N.Y. 2006) (holding that "[w]here all of the issues raised in the Complaint must be submitted to arbitration . . . dismissal is appropriate"); *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 445 (S.D.N.Y. 2004) (where all of plaintiff's claims were arbitrable, concluding to dismiss the complaint rather than stay litigation ); *Perry v. N.Y. Law Sch. & Collegis, Inc.*, 2004 WL 1698622 at 4 (S.D.N.Y. July 27, 2004) ("[b]ecause all of plaintiff's claims are subject to arbitration, no useful purpose will be served by granting a stay of plaintiff's claims against Collegis and thus its action against the defendant is dismissed"). *See also Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (reasoning that "[a]lthough we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose" and that "the weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."

179123-1

## IV.    CONCLUSION

For the foregoing reasons, Defendant is entitled to an Order dismissing the Complaint and compelling arbitration, and all other relief that the Court may deem just and proper.


DATED:      October 1, 2007.

                    Respectfully submitted,

                    ATLANTIC VIDEO, INC.

                    By Counsel

                    _____
                    Lynda Liebhauser [LL1447]
                    Empire State Building
                    Suite 3304
                    New York, NY 10118
                    (212) 268-7535
                    (212) 268-4965 (Facsimile)

179123-1