PROSKAUER ROSE LLP
Kathleen M. McKenna
Dylan S. Pollack
1585 Broadway
New York, New York 10036
Telephone: (212) 969-3000
Attorneys for Defendant ESPN Inc.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
RITA RAGONE,                                                 :

        Plaintiff,                                          :   Action No. 1:07-cv-06084 (JGK)

      v.                                                     :

ATLANTIC VIDEO at the Manhattan Center,                      :   **ECF Case**
d/b/a MCA-AV, INC.; ESPN INC.; WOODY
PAIGE; JAY CRAWFORD; TED NELSON;                             :
and, LORI BERLIN,
                                               :

        Defendants.
------------------------------------------------------------ X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ATLANTIC VIDEO'S MOTION TO DISMISS THE COMPLAINT
<u>AND TO COMPEL ARBITRATION</u>**

**PRELIMINARY STATEMENT**

On September 28, 2007 Defendant ESPN, Inc. ("ESPN") answered Plaintiff's complaint asserting claims of sexual harassment and unlawful retaliation against her former employer, Defendant Atlantic Video, Inc. ("Atlantic Video"), its client ESPN, and current or former employees of both entities. At the same time, Atlantic Video filed a Motion to Dismiss the Complaint and to Compel Arbitration based on a February 22, 2005 arbitration agreement in which Plaintiff expressly agreed to arbitrate "any and all claims and controversies arising out of [her] employment or its termination." As Plaintiff alleges in her complaint that she was hired to perform services for ESPN, and that she was discriminated against during her employment by ESPN personnel who she alleges supervised and directed her, there can be no dispute that her claims against ESPN are within the subject matter of the arbitration agreement. Thus, because Plaintiff's claims against ESPN concerned her "employment" and "its termination" they are sufficiently intertwined with her obligations under the arbitration agreement and thus she is equitably estopped from avoiding arbitration with ESPN.

## FACTUAL BACKGROUND

Plaintiff was employed as a make-up artist for Atlantic Video, a broadcast and film production company, from February 28, 2005 until April 11, 2006.[1]  Complaint ¶¶ 2, 11.  During that time, one of Atlantic Video's significant clients was the sports television network ESPN, which broadcast a number of its television shows from Atlantic Video's studio in New York City.  Complaint ¶ 2, 13.  Plaintiff was hired by Atlantic Video specifically to provide make-up services on the set of one such ESPN production, the morning talk show "Cold Pizza."  Complaint ¶¶ 13, 14.

Cold Pizza was hosted by ESPN's Dana Jacobson and Jay Crawford, and also featured panelist Woody Paige.  Complaint ¶ 14.  Plaintiff performed make-up services for these on-air personalities, and alleges that she was supervised by them and was required to follow their instructions and directives.  Complaint ¶¶ 4, 5, 15, 17.  Plaintiff also alleges she was supervised by and required to follow the instructions and directives of ESPN Producer, Lori Berlin ("Berlin").  Complaint ¶ 7, 17.  Indeed, although Atlantic Video manager Ted Nelson ("Nelson") was Plaintiff's direct supervisor at Atlantic Video, Plaintiff asserts that Berlin was her "on-site supervisor during her employment with Atlantic Video."  Complaint ¶¶ 6, 7.

On February 22, 2005, Plaintiff entered into an Arbitration Agreement with Atlantic Video as a condition of her employment (the "Arbitration Agreement").  Calli Aff, Ex. A.[2]  In that agreement, Plaintiff agreed to "submit . . . for final and binding arbitration . . . any and all claims or controversies arising out of [her] employment or its termination" including, but not

---

[1] For the purposes of this motion only, the relevant, well-pleaded fact allegations in the Complaint are deemed to be true.

[2] "Calli Aff." refers to the Affidavit of Adam Calli dated September 28, 2007, annexed as Exhibit 1 to Atlantic Video's Memorandum of Law in Support of it's Motion to Dismiss the Complaint and to Compel Arbitration ("Atlantic Video Mem.").

limited to, "claims concerning discipline and discharge; . . . claims for discrimination (including, but not limited to, race, color, sex, sexual orientation or preference, religion, national origin, age, marital status); claims of sexual harassment; and claims for violation of any federal, state, or local governing law, statute, regulation, and/or ordinance." Calli Aff., Ex. A ¶ 1.

With her signature dated February 22, 2005, Plaintiff acknowledged that the provisions of the Arbitration Agreement "shall apply from my first date of hire and shall include every day thereafter in which I have worked for the Company and continue after by separation from the Company, should a dispute arise related to my employment relationship with the Company." Calli Aff., Ex. A ¶ 6. She also agreed and acknowledged that that she had both read and had the opportunity to have answered to her satisfaction any questions about its provisions. Calli Aff., Ex. A ¶ 6.

On April 7, 2006, Plaintiff was notified by Nelson that her employment with Atlantic Video was being terminated. Complaint ¶ 91. On June 26, 2007, Plaintiff filed the instant lawsuit alleging sexual harassment and unlawful retaliation in connection with her employment with Atlantic Video and work on the set of Cold Pizza.

## **ARGUMENT**

## **PLAINTIFF'S CLAIMS AGAINST ESPN MUST BE DISMISSED BECAUSE THEY ARE SUBJECT TO ARBITRATION**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Accordingly, where the terms of an arbitration agreement have been disregarded, a court is obligated to compel arbitration upon motion. See 9 U.S.C. § 4; Dean Witter Reynolds v. Byrd, 470 U.S. 213, 219 (1985); (Atlantic Video Mem. at 8-10 and cases cited therein).

As fully explained in Atlantic Video's brief in support of this motion, the instant dispute is governed by the FAA because the Arbitration Agreement (addressing Plaintiff's employment in the television broadcasting industry) unquestionably involves interstate commerce. (See Atlantic Video Mem. at 6-8 and cases cited therein) Moreover, there can be no serious dispute that the Arbitration Agreement is both valid and enforceable and broad enough to reach the sexual harassment and retaliation claims Plaintiff asserts in the complaint. Calli Aff., Ex. A (Plaintiff's agreement to submit all claims of "sexual harassment" and violations of statute related to her employment to final and binding arbitration); (see also Atlantic Video Mem. at 10-13 and cases cited therein) The only question then, is whether ESPN, a non-signatory to the Arbitration Agreement, can properly enforce that agreement against Plaintiff, an undeniable signatory. Under the established law of this Circuit, the answer is clearly yes.

Both the United States Supreme Court and the Second Circuit have made clear that "arbitration is strictly a matter of contract." Ross v. American Express Co., 478 F.3d 96, 99 (2d Cir. 2007), citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574,

4

582 (1960). Accordingly, "ordinary principles of contract law apply" and the Second Circuit has recognized "a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement . . . ." Ross, 478 F.3d. at 99, citing Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995) (detailing "five theories for binding nonsignatories to arbitration agreements"); see also, Chase Mortg. Company-West v. Bankers Trust Co., No. 00 Civ. 8150 2001 U.S. Dist. LEXIS 6683, at *4 (S.D.N.Y. May 18, 2001) (observing that "[i]t is permissible . . . for a non-signatory to an arbitration agreement to compel arbitration of claims brought by a signatory to that agreement"). Indeed, the Second Circuit has held that these common law theories apply with particular force where it is a non-signatory seeking to enforce an arbitration agreement against a signatory, and not vice-versa. As observed by the Court in Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc., 198 F.3d 88 (2d Cir. 1999), cert. denied, 531 U.S. 815 (2000), "while a court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party," it does not face that concern where the signatory-party is the one "trying to escape its obligation to arbitrate." Id. at 97.

One of the common law theories recognized by the Second Circuit for allowing a non-signatory to enforce an arbitration agreement is equitable estoppel, under which the signatory "will be estopped to 'avoid arbitration with a non-signatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" Chase Mortg., 2001 U.S. Dist. LEXIS 6683, at *4-5, quoting Smith/Enron Cogeneration, 198 F. 3d at 98. In Chase Mortgage, Judge Mukasey, interpreting the applicable Second Circuit precedent, suggested a two-part test to determine whether the signatory's claims are sufficiently "intertwined with the underlying contract obligations" such that equitable

5

estoppel applies. Chase Mortg., 2001 U.S. Dist. LEXIS 6683, at *5-6. First, it must be shown that "the signatory's claims arise under the subject matter of the underlying agreement," and second, there must be "a close relationship between defendant signatory and defendant non-signatory." Id. at *6 (citation omitted); see also, Choctaw Generation L.P. v. Am. Home Assur. Co., 271 F.3d 403, 406 (2d Cir. 2001) (holding that signatory to arbitration agreement was estopped from avoiding arbitration with non-signatory because of the "tight relatedness of the parties, contracts and controversies").

The test for equitable estoppel is clearly satisfied here as Plaintiff has pled facts sufficiently demonstrating both that her claims arise from the subject matter of the Arbitration Agreement and that a close relationship exists between Atlantic Video and ESPN. As to the first prong of the test, the clear "subject matter" of Plaintiff's Arbitration Agreement with Atlantic Video is "any and all claims or controversies arising out of [her] employment or its termination" generally, as well as "claims of sexual harassment" and "claims for violation of any federal, state, or local government law, statute, regulation, and/or ordinance" specifically. Here, Plaintiff asserts against Atlantic Video, ESPN and their current or former employees twelve counts of sexual harassment and unlawful retaliation under federal, state and local law – statutory employment claims that each require the existence of an employer/employee relationship to be viable. See 42 U.S.C. §§ 2000e-2(a), 2000e-3(a); N.Y. Exec. L. §§ 296(1), 296(6); N.Y. Admin. Code §§ 8-107(1), 8-107(6), 8-107(7). Indeed, courts routinely dismiss claims brought under these statutes where the plaintiff fails to establish the requisite employment relationship. See, e.g., Gulino v. Bd. of Educ. of the New York City Sch. Dist., 460 F.3d 361, 370-73 (2d Cir. 2006) (observing that "the existence of an employer-employee relationship is a primary element of Title VII claims" and dismissing Title VII claims); Eaton v. Goodstein Mgmt., Inc., No. 97

Civ. 6582, 1999 U.S. Dist. LEXIS 17655, at *22 (S.D.N.Y. Nov. 10, 1999) (dismissing New York State and New York City Human Rights Law claims); <u>Robins v. Max Mara, U.S.A</u>, 923 F. Supp. 460, 471 (S.D.N.Y. 1996) (dismissing New York State Human Rights Law claims).

In addition to the employment-related nature of the statutory claims she asserts, the specific factual allegations asserted in the complaint also establish that Plaintiff's claims against ESPN arise under the subject matter of the Arbitration Agreement. Indeed, Plaintiff has alleged: (1) that she was hired by Atlantic Video specifically "to provide make-up artistry and other services to ESPN's Cold Pizza talent"; (2) that she was "supervised" by and "required to follow the instructions and directives of ESPN talent and ESPN supervisors"; and (3) that, in addition to her supervisors at Atlantic Video, her "on-site supervisor during her employment with Atlantic Video" was ESPN producer Lori Berlin. Because Plaintiff's claims against ESPN – both by statutory definition and based on the facts alleged – clearly arise under the subject matter of the Arbitration Agreement (<u>i.e.</u>, any and all claims "arising out of her employment or its termination"), the first prong of the test for equitable estoppel is met.

There can also be no dispute that Plaintiff's allegations concerning the relationship between Atlantic Video and ESPN are sufficient to establish the second prong of the estoppel analysis, the existence of a "close relationship" between the defendants. In particular, Plaintiff has alleged both that ESPN was a "significant client" of Atlantic Video and "operated various shows, including 'Cold Pizza,' out of Atlantic Video's studio in [New York City]." Indeed, Plaintiff cannot assert her statutory discrimination claims against ESPN unless she is alleging the existence of an employment relationship. See 42 U.S.C. §§ 2000e-2(a), 2000e-3(a); N.Y. Exec. L. §§ 296(1), 296(6); N.Y. Admin. Code §§ 8-107(1), 8-107(6), 8-107(7). Thus, because of both the undisputed "close relationship" between Atlantic Video and ESPN and the employment-

related subject matter of her claims, Plaintiff's claims are sufficiently intertwined with her underlying contractual obligations such that she is equitably estopped from avoiding arbitration with ESPN. Accordingly, Plaintiff's claims against ESPN should be dismissed.[3]

## CONCLUSION

For the reasons stated herein, the Complaint should be dismissed in its entirety and the motion to compel arbitration should be granted.

Dated: New York, New York
October 12, 2007

                                        PROSKAUER ROSE LLP

                                        By:    s/ Kathleen M. McKenna
                                                 Kathleen M. McKenna
                                                 Dylan S. Pollack
                                        1585 Broadway
                                        New York, New York 10036
                                        (212) 969-3000
                                        *Attorneys for Defendant*
                                        *ESPN, Inc.*

---

[3] Plaintiff's complaint should also be dismissed because it is untimely. In Paragraph 6 of the Arbitration Agreement, Plaintiff expressly agreed that "[i]n the event that any court . . . allows any litigation regarding a claim . . . [covered by the agreement] to go forward . . . the court proceeding must be commenced *no later than six months* after the earlier of the termination of my employment at the Company of the date that my claim arose" Calli Aff., Ex. A ¶ 6 (emphasis added). (Plaintiff also agreed in that paragraph that, in any such litigation, she "expressly [waived] all rights to a trial by jury" and that discovery would be limited "to one deposition and one set of . . . interrogatories" by each party.) Plaintiff alleges she was notified by Atlantic Video that her employment was being terminated on April 7, 2006 and that she was finally discharged on April 11, 2006, but she did not bring the instant lawsuit until June 26, 2007 – well over a year later. Accordingly, even if the Court concludes that Plaintiff's claims against ESPN are not subject to arbitration, they are untimely under the clear terms of the Arbitration Agreement.

8