PROSKAUER ROSE LLP
Kathleen M. McKenna
Dylan S. Pollack
1585 Broadway
New York, New York 10036
Telephone: (212) 969-3000
Attorneys for Defendant ESPN Inc.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
RITA RAGONE,                                                 :

              Plaintiff,                 :            Action No. 1:07-cv-06084 (JGK)

       v.                                                      :

AVI at the Manhattan Center,                                 :            **ECF Case**
d/b/a MCA-AV, INC.; ESPN INC.; WOODY
PAIGE; JAY CRAWFORD; TED NELSON;                             :
and, LORI BERLIN,
                                                             :
              Defendants.
------------------------------------------------------------ X

**DEFENDANT ESPN'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT ATLANTIC VIDEO'S MOTION
TO DISMISS THE COMPLAINT AND TO COMPEL ARBITRATION**

## **PRELIMINARY STATEMENT**

Defendant ESPN, Inc. ("ESPN") has moved to compel arbitration because Plaintiff's claims against it are sufficiently intertwined with her obligations under an arbitration agreement between herself and her former employer, Defendant Atlantic Video, Inc. ("AVI"), thus rendering Plaintiff equitably estopped from avoiding arbitration with ESPN. In opposing the motion, Plaintiff (wisely) does not dispute that her claims of sexual harassment and unlawful retaliation arise under the subject matter of the arbitration agreement, which expressly applies to "any and all claims and controversies arising out of [her] employment or its termination." Instead, Plaintiff argues that there is no agreement to arbitrate and that there is not a sufficiently close relationship between ESPN (the non-signatory defendant) and AVI (the signatory defendant) to permit ESPN to compel arbitration of Plaintiff's claims.

Plaintiff's opposition must fail. Her allegations of unconscionability are contradicted by the case law and her claims are also insufficient to raise an issue regarding the genuineness of the arbitration agreement. Additionally, the courts of this Circuit and others have repeatedly held that where a signatory to an arbitration agreement alleges interdependent misconduct by both a signatory and a non-signatory, equitable estoppel applies to compel arbitration. Here, Plaintiff's claims of harassment and retaliation against AVI (her former employer) and ESPN (the entity for which she was exclusively assigned to work) are not only interdependent, they are one in the same. Consistently, in the Complaint, Plaintiff repeatedly treats ESPN and AVI together in the nine causes of action she asserts against them. Plaintiff cannot now escape the consequences of her allegations by arguing that ESPN and AVI lack the requisite close relationship to justify the application of equitable estoppel. As Plaintiff's claims against ESPN are subject to arbitration, the Complaint should be dismissed and arbitration should be compelled.

## ARGUMENT

I.  **THE COMPLAINT ESTABLISHES THE REQUISITE CLOSE RELATIONSHIP FOR EQUITABLE ESTOPPEL BY ALLEGING INTERDEPENDENT MISCONDUCT BY BOTH AVI AND ESPN**

In seeking to avoid arbitration of her claims against ESPN, Plaintiff does *not* dispute:

- That under the equitable estoppel theory "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed . . . and the issues that [have] arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163 (2d Cir. 2004) (citations omitted);

- That the appropriate test for determining whether the signatory's claims are sufficiently intertwined with the underlying contract obligations such that equitable estoppel applies is, first, whether "the signatory's claims arise under the subject matter of the underlying agreement," and second, whether there is "a 'close relationship' between defendant signatory and defendant non-signatory." Chase Mortg. Company-West v. Bankers Trust Co., No. 00 Civ. 8150, 2001 U.S. Dist. LEXIS 6683, at *6 (S.D.N.Y. May 18, 2001) (citations omitted); (Pl. Br. at 44-45);[1] and, importantly,

- That here, Plaintiff has pled facts sufficiently demonstrating that her harassment and retaliation claims against ESPN arise from the subject matter of the February 22, 2005 arbitration agreement between herself and AVI (the "Arbitration Agreement"), and, thus, the first prong of the test for equitable has been met. (Pl. Br. at 45).[2]

Plaintiff's defense to this Court's compelling arbitration of her claims against ESPN, therefore, is her claim that she has not plead facts sufficient to establish the requisite close relationship between ESPN and AVI to justify an application of equitable tolling. Plaintiff is wrong.[3]

---

[1] "Pl. Br." refers to Plaintiff's Brief in Opposition to Defendants' Respective Motions to Dismiss dated October 29, 2007.

[2] Plaintiff also does not dispute: that both the United States Supreme Court and the Second Circuit have made clear that "[a]rbitration is strictly a matter of contract," Ross v. Am. Express Co., 478 F.3d 96, 99 (2d Cir. 2007), citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960); that, accordingly, "ordinary principles of contract law apply" and there are "a number of common law principles . . . that may allow non-signatories to enforce an arbitration agreement . . . ." Ross, 478 F.3d at 99, citing Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995); and that one of the common law theories recognized by the Second Circuit for allowing a non-signatory to enforce an arbitration agreement is equitable estoppel. Id.

[3] Plaintiff further argues that four other common law principles of contract law that may allow a non-signatory to enforce an arbitration agreement (namely, incorporation by reference, assumption, agency, and veil-piercing/alter ego) do not apply here, and that ESPN does not qualify as an intended beneficiary of the Arbitration Agreement. (Pl. Br. at 43-44, 47-48). Notwithstanding these lengthy protestations, ESPN does not claim that Plaintiff is bound

2

In recognizing estoppel as a basis on which a non-signatory can compel arbitration, the Second Circuit has consistently cited with approval the Eleventh Circuit's decision in Sunkist Soft Drinks v. Sunkist Growers, 10 F.3d 753, 757-58 (11th Cir. 1993), cert. denied, 115 S. Ct. 190 (1994), for its holding that a signatory will be estopped from avoiding arbitration with a non-signatory "when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."[4] Smith/Enron Cogeneration Ltd. Ptshp., Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 98 (2d Cir. 1999) (citations omitted), cert. denied, 531 U.S. 815 (2000); Thomson-CSF, 64 F.3d at 799.

In arguing that the requisite close relationship does not exist between AVI and ESPN, Plaintiff relies *exclusively* on the specific facts of Chase Mortgage and Choctaw Generation L.P. v. Am. Home Assur. Co., 271 F.3d 403 (2d Cir. 2001) – two cases cited by ESPN in its moving brief not for their facts, but for the undisputed legal proposition that a close relationship between the defendant signatory and defendant non-signatory must exist for equitable estoppel to apply. (See ESPN Br. at 6)[5] In any event, based on the facts presented in Chase Mortgage and Choctaw, Plaintiff incorrectly suggests that a close relationship between a signatory and a non-signatory can only exist where: (1) there is a parent/subsidiary relationship; (2) they were both

---

to arbitrate her claims against it because of any of these theories. Indeed, as discussed herein and in ESPN's moving brief, the facts and applicable law make clear that Plaintiff is bound to arbitrate her claims against ESPN because of the doctrine of equitable estoppel.

[4] As observed by Judge Kaplan in Carroll v. Leboeuf, Lamb, Greene & MacRae, L.L.P., 374 F. Supp. 2d 375 (S.D.N.Y. 2005), the equitable estoppel doctrine "appears to depend upon the broad federal policy favoring arbitration and, at least in circumstances in which the estopped party will be arbitrating with counterparties to the agreement containing the arbitration clause . . . considerations of adjudicative economy, not consent." Id. at 378. See also, Camferdam v. Ernst & Young Int'l, Inc., No. 02 Civ. 10100, 2004 U.S. Dist. LEXIS 2284, *22 (S.D.N.Y. Feb. 12, 2004) ("If this Court were to force the [non-signatory defendants] to engage in litigation on the very same issues that will be arbitrated by the Plaintiffs and the [signatory defendants], the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted") (citation omitted).

[5] "ESPN Br." refers to the Memorandum of Law in Support of Defendant AVI's Motion to Dismiss the Complaint and to Compel Arbitration dated October 12, 2007.

"active participants" in the formation of the contract; or (3) "all parties involved had relationships with each other at the time the contracts were formed." (Pl. Br. at 45-46)

Nowhere in either Chase Mortgage or Choctaw does either court even suggest that these are the only three circumstances justifying the application of estoppel.[6] To the contrary, the Second Circuit has expressly stated that "[the] estoppel inquiry is fact-specific . . . and [the court has had] no occasion to specify the minimum quantum of 'intertwined-ness' required to support a finding of estoppel." JLM Indus., 387 F.3d at 178. Even more recently, however, the Second Circuit held that the requisite close relationship for estoppel can be established by the plaintiff's allegations of *substantially interdependent and concerted misconduct* against the signatory and non-signatory defendants. See Denney v. BDO Seidman, L.L.P., 412 F.3d 58 (2d Cir. 2005); see also, MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999) (same). That is exactly what Plaintiff has done here.

In Denney, plaintiffs alleged in their complaint that defendants accounting firm ("BDO Seidman") and bank ("Deutsche Bank") recruited them to participate in a fraudulent tax scheme

---

[6] Plaintiff's characterization and interpretation of the Chase Mortgage and Choctaw decisions are incorrect in any event. First, although the court in Chase Mortgage found that a close relationship existed between a parent (the non-signatory) and its subsidiary (the signatory), it did not "base its finding" on the fact that the parent "had a superior level of control over defendant non-signatory" as Plaintiff disingenuously asserts. (Pl. Br. at 45) Indeed, the court *never once mentioned* the level of control between the two defendants in finding the requisite close relationship. See generally, Chase Mortgage, 2001 U.S. Dist. LEXIS 6683; see also, Ingstad v. Grant Thornton, L.L.P., No. 3:05 CV 90, 2006 U.S. Dist. LEXIS 94176, at *18 (D. N.D. Dec. 19, 2006) (rejecting any claim that that a "legal" relationship such as "parent/subsidiary" need exist for the "close relationship" requirement to be met)  Second, Plaintiff's contention regarding the non-signatory defendants in Chase Mortgage and Choctaw being "active participants in the formation of the contract" because they guaranteed the contractual obligations of the signatory defendants hardly speaks to the "close relationship" factor for equitable estoppel (indeed, in Chase Mortgage, the court does not even consider it).  Plaintiff's *own* discussion of this "active participation" claim is itself confused, quickly shifting its focus from equitable estoppel to incorporation by reference and assumption – two entirely separate theories that ESPN does not assert. (Pl. Br. at 46) Finally, Plaintiff's emphatic claim that "the most significant difference" between Chase Mortgage and Choctaw and the instant case is that in those cases "all parties involved had relationships with each other at the time the contracts were formed" whereas here, Plaintiff had "absolutely no reason to infer that the arbitration agreement would be extended to her work for ESPN," is also misplaced. (Pl. Br. at 46) While Plaintiff's assertion may arguably speak to whether ESPN was an intended beneficiary of the Arbitration Agreement (again, a claim ESPN does not make), it is irrelevant to whether equitable estoppel applies to require Plaintiff to arbitrate her claims against ESPN.

4

in violation of federal law. As part of the alleged scheme, some of the plaintiffs entered into a consulting agreement with BDO Seidman, which contained an arbitration provision. Id. at 61-62. After the plaintiffs filed suit, Deutsche Bank, which was not a signatory to the consulting agreement, sought to compel arbitration of the plaintiffs' claims relying on estoppel. The Second Circuit observed that "[h]aving alleged in this . . . action that Deutsche Bank and BDO defendants acted in concert to defraud plaintiffs . . . and that defendants' fraud arose in connection with BDO's tax-strategy advice, plaintiffs cannot now escape the consequences of those allegations by arguing that the Deutsche Bank and BDO defendants lack the requisite close relationship, or that plaintiffs' claims against the Deutsche Bank defendants are not connected to Deutsche Bank's relationship with BDO." Id. at 70, citing Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir.), cert. denied, 531 U.S. 1013 (2000); MS Dealer, 177 F.3d at 947. See also, Ingstad, 2006 U.S. Dist. LEXIS 94176, at *19 ( applying the reasoning of Denney and granting non-signatory's request for a stay pending arbitration where "the complaint contains countless allegations indicating that a unified scheme was created and perpetrated by the Defendants as a group").

The district courts of this Circuit have also applied the court's reasoning in Denney to find a signatory equitably estopped from arbitrating claims against a non-signatory. See Vaughn v. Leeds, Morelli & Brown, P.C., No. 04 Civ. 8391, 2005 U.S. Dist. LEXIS 16792, at *13-14 (S.D.N.Y. Aug. 12, 2005) (finding that "[plaintiff's] basic premise that Second Circuit precedent requires that the defendants have a close relationship independent of the alleged [wrongdoing] is . . . incorrect"); see also, Vertucci v. Orvis, No. 3:05 CV 1307, 2006 U.S. Dist. LEXIS 39320, at *16-17 (D. Conn. May 30, 2006) ("Having lumped the defendants together . . . Plaintiff cannot now claim that the defendants have an insufficient relationship" to establish estoppel); Carroll,

5

374 F. Supp. 2d at 378 ("Having elected to tar [the non-signatory defendants] with the very broad brush that they applied to other defendants, plaintiffs' attempts to avoid arbitration by pointing to their distinctness is unpersuasive").

Plaintiff here has alleged substantially interdependent and concerted misconduct against both ESPN and AVI such that she cannot now deny a relationship between the two sufficient for this Court's application of equitable estoppel. In particular, Plaintiff's claims are that ESPN was a significant client of AVI (Complaint ¶ 13); that AVI hired her to work *exclusively* for ESPN at AVI's studio in New York City (Complaint ¶¶ 13, 14); that during her "employment with AVI for ESPN Cold Pizza" she was subject to sexual harassment by ESPN employees (Complaint ¶¶ 18, 19, 36); that such behavior was "ignored" and "considered humorous by AVI and ESPN management" (Complaint ¶ 20); that Plaintiff complained "on numerous occasions to both AVI and ESPN management employees" and that she wanted to give "both AVI and ESPN an opportunity . . . to correct this atmosphere" (Complaint ¶¶ 21, 60, 62); that she met with AVI supervisor Ted Nelson ("Nelson") to complain about the conduct of ESPN employees (Complaint ¶¶ 69, 73); that during one such meeting, Nelson revoked a raise she had been promised along "with other perks she was previously allowed" (Complaint ¶ 75); that she was made to feel "that no one at either ESPN or AVI would ever take her seriously" (Complaint ¶ 80); that she was issued a write-up "in retaliation for [her] complaints" about the atmosphere on the Cold Pizza set (Complaint ¶¶ 84, 86); that Nelson told her she was being fired because she "[didn't] even know how to . . . work when [she was at ESPN]" and because ESPN employees "said [she] was soliciting work" (Complaint ¶ 93); and that she was later told by an AVI employee that "[ESPN Producer Lori Berlin] and others were after her due to her complaints about the sexual harassment." (Complaint ¶ 96)

Clearly, Plaintiff's claims of unlawful harassment and retaliation against AVI and ESPN are not only interdependent and concerted, but virtually indentical. See MS Dealer, 177 F.3d at 948 (applying equitable estoppel where plaintiff's claims against signatory and non-signatory defendants were "based on the same facts and are inherently inseparable"). Indeed, in the nine causes of action asserted against the companies, Plaintiff repeatedly refers to the two as a single unit, lumping them together and seeking to hold each responsible for *all* of the misconduct alleged – e.g., "*Defendants* AVI *and* ESPN subjected [Plaintiff] to persistent and continuous sexual advancements and harassment by Defendants Paige and Crawford" (Complaint ¶ 110) (emphasis added); "*Defendants,* through *their* deliberate indifference, created and maintained an intimidating, hostile, offensive and severely abusive environment, on the basis of sex, in violation of the Civil Rights Act of 1964" (Complaint ¶ 111) (emphasis added); "*Defendants* AVI *and* ESPN revoked [Plaintiff's] raise and other perks she previously received during her employment, and subjected her to retaliatory harassment, in retaliation for her protected conduct in complaining about a hostile work environment." (Complaint ¶ 115) (emphasis added) (See also Complaint ¶¶ 109-37, 146-59). Having done so, Plaintiff "cannot now escape the consequences of those allegations by arguing" that the AVI and ESPN defendants "lack the requisite close relationship" warranting this Court's application of the estoppel theory to compel arbitration of Plaintiff's claims against ESPN. Denney, 412 F.3d at 70.

## II.   THE ARBITRATION AGREEMENT IS ENFORCEABLE

### A. Plaintiff Has Failed To Show That the Arbitration Agreement is Unconscionable

As held by the New York State Court of Appeals, "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable . . . ." Gillman v. Chase Manhattan Bank NA, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 791 (1988); see also, Anonymous v. JP Morgan Chase & Co., No. 05 Civ. 2442, 2005 U.S.

7

Dist. LEXIS 26083, at *16 (S.D.N.Y. Oct. 29, 2005) (Koeltl, J.). To determine whether there is procedural unconscionability, New York courts examine whether a party lacked meaningful choice in entering into the contract at issue, Moss v. Rent-A-Center, Inc., No. 06 Civ. 3312, 2007 U.S. Dist. LEXIS 60011 (E.D.N.Y. Aug. 15, 2007), and have emphasized that "[m]ere inequality in bargaining power between employers and employees is not alone sufficient to hold arbitration agreements unenforceable." Gold v. Deutsch Aktiengesellschaft, 365 F.3d 144, 150 (2d Cir.), cert. denied, 543 U.S. 874 (2004).

The case law makes clear that Plaintiff's claims that she lacked meaningful choice in entering into the arbitration agreement because of her level of education, lack of representation by counsel and the presentation of the agreement as a condition of employment is insufficient to establish procedural unconscionability. See, e.g., Moss, 2007 U.S. Dist. LEXIS 60011, at *14 ("If Plaintiffs did not understand the form of the arbitration agreement or had questions about it, the burden was upon them to have their concerns addressed before placing their signatures on the agreement"), citing Baldeo v. Darden Restaurants, Inc., No. 04 CV 2185, 2005 U.S. Dist. LEXIS 289, at *18 (E.D.N.Y. Jan. 11, 2005); Maye v. Smith Barney, Inc., 897 F. Supp. 100, 108 (S.D.N.Y. 1995) ("[A]n argument such as the one made by Plaintiff's that one did not have the time to read an agreement before signing it must fail or else almost every arbitration agreement would be subject to an effective court challenge"), appeal denied, 903 F. Supp. 570 (1995). Plaintiff's reliance on Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377 (S.D.N.Y. 2002) – a case where the employer used high pressure tactics to get the plaintiff to sign an arbitration agreement only *after* she commenced litigation – is, thus, entirely misplaced. See, e.g., Valdes v. Swift Transp., Co., 292 F. Supp. 2d 524, 533 (S.D.N.Y. 2003) (distinguishing Brennan where

8

there was no evidence of coercive tactics and plaintiff was not in fear of losing her job); Stewart v. Paul, Hastings, Janofsky & Walker, LLP, 201 F. Supp. 2d 291 (S.D.N.Y. 2002) (same).[7]

The case law also demonstrates that Plaintiff's claims that the arbitration agreement is substantively unconscionable because it shortens the applicable limitations period to 90-days; includes a fee shifting provision; renders the arbitrator's decision "non-appealable"; and limits the time in which she may file an action in Court and the permitted discovery in any such action, must also be rejected. See Iran Aircraft Industries v. Avco Corp., 980 F.2d 141, 145 (2d Cir. 1992) ("The terms 'final' and 'binding' merely reflect a contractual intent that the issues joined and resolved in the arbitration may not be tried *de novo* in any court"); Bar-Ayal v. Time Warner Cable, Inc., No. 03 Civ. 9905, 2006 U.S. Dist. LEXIS 75972 (S.D.N.Y. Oct. 16, 2006) (arbitration agreement "eliminate[ing] pre-hearing discovery" and replacing a three to six year statutory period with a one-year limit not substantively unconscionable); McDaniel v. Bear Stearns & Co., 196 F. Supp. 2d 343, 346 (S.D.N.Y. 2002) (holding that "a motion to vacate is not an appeal" and that "district courts do not hear appeals from decisions of arbitration panels which, by definition are final and binding"); Rajjak v. McFrank & Williams, No. 01 Civ. 0493, 2001 U.S. Dist. LEXIS 9764 (S.D.N.Y. July 10, 2001) (enforcing arbitration agreement where the only events that would render a fee-shifting provision unlawful might never occur). Thus, Plaintiff's unconscionability claim must fail.

---

[7] Plaintiff's reliance on a California state court decision for the proposition that an arbitration agreement "imposed on employees as a condition of employment" is unconscionable must also be rejected. See, e.g., Williams v. Parkell Prods., 91 Fed. App'x. 707, 708 (2d Cir. 2003) (holding that "conditioning employment on the acceptance of an agreement to arbitrate disputes . . . is not itself unlawfully coercive"); Ciago v. Ameriquest Mortg. Co., 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003) ("The mere fact that an agreement to arbitrate was required as a condition of employment . . . is insufficient to invalidate the provision").

### B. Plaintiff Has Failed to Establish That The Agreement Is Not Genuine

Finally, with respect to Plaintiff's claim challenging the genuineness of the arbitration agreement, the Second Circuit has made clear that "[a] party resisting arbitration on the ground that no agreement to arbitration exists must submit *sufficient evidentiary facts* in support of this claim in order to precipitate the trial contemplated by [the Federal Arbitration Act]." Manning v. Energy Conversion Devices, Inc., 833 F.2d 1096, 1102 (2d Cir. 1987) (emphasis added). Here, Plaintiff's challenge to the genuineness of the arbitration agreement stops short of averring that the agreement is a fraud, and her allegations that she "does not *believe*" she ever signed the document and "*believe[s]*" that the signature on it may be a "forgery or was transposed" are insufficient to meet the standard governing such claims. Affidavit of Rita Ragone dated October 30, 2007 ¶ 13.[8]

### CONCLUSION

For the reasons stated herein, the Complaint should be dismissed in its entirety and the motion to compel arbitration should be granted.

Dated: New York, New York
       November 13, 2007

             PROSKAUER ROSE LLP

             By:  s/ Kathleen M. McKenna
                Kathleen M. McKenna
                Dylan S. Pollack
             1585 Broadway
             New York, New York 10036
             (212) 969-3000
             *Attorneys for Defendant*
             *ESPN, Inc.*

---

[8] ESPN, however, must leave it to AVI to specifically address the facts.