UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

RITA RAGONE,

                        Plaintiff,              07 Civ. 6084 (JGK)

        - against -                             OPINION AND ORDER

ATLANTIC VIDEO at the Manhattan
Center, d/b/a MCA-AV, INC.; ESPN
INC.; WOODY PAIGE; JAY CRAWFORD; TED
NELSON; and LORI BERLIN

                        Defendants.
────────────────────────────────

JOHN G. KOELTL, District Judge:


        Pursuant to 9 U.S.C. §§ 3 and 4, the defendants, Atlantic

Video, Inc. ("AVI") and ESPN, Inc. ("ESPN") (collectively the

"defendants") move to dismiss the Complaint and to compel

arbitration of the plaintiff's sexual harassment and retaliation

claims brought under Title VII of the Civil Rights Act of 1964,

42 U.S.C. §2000e-2(a), and the New York State and New York City

Human Rights Laws.[1]  The defendants rely on an arbitration

─────────────

[1] The Complaint also lists individual defendants who are employees or
agents of AVI or ESPN.  There is no indication that the Complaint was ever
served on those defendants and the parties have not addressed the individual
defendants in their papers.  The reasons for requiring arbitration against
the corporate defendants apply equally to employees or agents of those
entities.  See, e.g., Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1360 (2d Cir.
1993) ("Courts in this and other circuits consistently have held that
employees or disclosed agents of an entity that is a party to an arbitration
agreement are protected by that agreement.") (citing, e.g., Nesslage v. York
Sec., Inc., 823 F.2d 231, 233-34 (8th Cir. 1987); Scher v. Bear Stearns &
Co., 723 F. Supp. 211, 216-17 (S.D.N.Y. 1989); Brener v. Becker Paribas,
Inc., 628 F. Supp. 442, 451 (S.D.N.Y. 1985)); see also Gateson v. Aslk-Bank,
N.V., No. 94 Civ. 5849, 1995 WL 387720, at *5 (S.D.N.Y. June 29, 1995) ("Acts
by employees of one of the parties to a customer agreement are equally
arbitrable as acts of the principals as long as the challenged acts fall
within the scope of the customer agreement.") (internal citations omitted).

agreement purportedly signed by the plaintiff on February 22,
2005, which contains language agreeing to submit to the American
Arbitration Association ("AAA") for trial and binding
arbitration under the AAA's Employment Arbitration Rules (as
modified) "any and all claims and controversies arising out of
my employment or its termination including, but not limited to,
. . . claims of sexual harassment; and claims for violation of
any federal, state, or local government law . . . ." (AV-3, or
"Arbitration Agreement".)

The plaintiff opposes the motion to dismiss and compel
arbitration on three grounds. First, she disputes that the
Arbitration Agreement is genuine, and she maintains the
signature on the agreement is a forgery. (Aff. of Rita Ragone,
dated Oct. 20, 2007 ("Ragone Aff.") ¶ 13.) Second, the
plaintiff argues that the Arbitration Agreement is unenforceable
because it is substantively and procedurally unconscionable.
Finally, the plaintiff alleges that the Arbitration Agreement
cannot be enforced by ESPN because ESPN did not sign the
arbitration agreement.

Because there were factual issues as to whether the
plaintiff in fact signed the Arbitration Agreement, the Court,

---

However, in the absence of any motion or argument, the Court will enter a
separate order requiring the plaintiff to show cause within twenty days why
the Complaint should not be dismissed without prejudice against the
individual defendants for failure to serve them within 120 days after the
Complaint was filed. See Fed. R. Civ. P. 4(m).

with the agreement of the parties, held an expedited non-jury trial on July 15 and 21, 2008 to resolve the factual issues.  At the hearing, Ms. Ragone and Edward ("Ted") Nelson, a technical producer for Atlantic Video, testified.  Peter Tytell, a handwriting expert, also testified.  The Court now makes the following findings of fact and reaches the following conclusions of law.


## I.

For ten years the plaintiff has been a celebrity makeup and hair artist in television, photo shoots, and private jobs.  She is also a beautician and cosmetologist.  (Tr. 5.)  The plaintiff auditioned with AVI for a job as a makeup artist.  After working as a freelancer, she was offered and accepted a position as a Makeup Artist reporting to Ted Nelson.  (Tr. 5, 117.)  On February 22, 2005, Ms. Ragone was interviewed by Ted Nelson, General Manager of ATV.  Ms. Ragone testified that the entire session took about twenty minutes while Mr. Nelson testified more credibly that it took about an hour.  (Tr. 8, 117.)  In any event, the session was a reasonably substantial meeting.  There were only slight negotiations on the amount of money to be paid.

In the course of the meeting Ms. Ragone agreed to accept the offer of employment and Mr. Nelson presented Ms. Ragone with documents to be signed.  Ms. Ragone had the opportunity to take

the documents home to read them, but chose not to do so.  (Tr.
121.)  Ms. Ragone signed a letter accepting the offer of
employment.  (Tr. 120; AV-2.)  The document specifically refers
to an Attachment, which is an "Arbitration Agreement."  Ms.
Ragone also signed the Arbitration Agreement, AV-3.  (Tr. 121-
22.)  The Arbitration Agreement reflects that Ms. Ragone signed
the document, dated it and also spelled out her name on the
document.  The Arbitration Agreement contains the broad
arbitration clause recited at the beginning of this Opinion.
Mr. Nelson testified credibly that he saw Ms. Ragone sign the
Arbitration Agreement and fill out the other information in the
Agreement.  The signature does appear to be Ms. Ragone's.  Mr.
Nelson's testimony was also supported by the testimony of the
handwriting expert Mr. Tytell that the person who signed the
Arbitration Agreement was the same person who signed numerous
other documents that Ms. Ragone admitted to having written.
(Tr. 71.)  While the document contains three notations in the
upper right corner, those markings show changes from a prior
draft and do not affect in any way the substance of the document
(Tr. 122-23; 140-42.)

     Ms. Ragone testified that she did not recall signing the
Arbitration Agreement and that it did not look like her
signature, and that she did not believe she signed it, but
avoided categorically denying that she signed the document.

(Tr. 22-27.)  The credible testimony establishes that Ms. Ragone did in fact sign the Arbitration Agreement, although she may not now recall doing so.

There is no dispute that AVI hired the plaintiff as a make-up artist and assigned her to provide make-up services to one of AVI's major clients, ESPN.  (Compl. ¶¶ 11, 13.)  The plaintiff worked on the set of "Cold Pizza," a television morning sports program.  (Compl. ¶¶ 13-14.)  During the course of her employment, the plaintiff alleges she was subjected to pervasive sexual harassment and that she was forced to work in a hostile environment.  (Compl. ¶¶ 18-19, 21-23.)  She alleges that she was discharged in April 2005 for reporting the sexual harassment to managers at AVI and ESPN.  (Compl. ¶¶ 69, 84, 91.)


## II.

The first matter to be resolved is whether the Federal Arbitration Act ("FAA") or New York state law must be applied to each of the plaintiff's defenses.  "Section 2 of the FAA ensures that courts enforce arbitration clauses incorporated in contracts involving interstate commerce, thereby 'creat[ing] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act'." Sec. Ins. Co. of Hartford v. TIG Ins. Co., 360 F.3d 322, 325 (2d Cir. 2004) (quotations omitted).  However, the arbitration

agreement contains a choice-of-law provision, which states, "I further understand, acknowledge, and agree that this Agreement shall be construed and enforced in accordance with the laws of the state of New York, without regard to principles of conflicts of law." (Arbitration Agreement ¶ 2.)

**A.**

The plaintiff's first two defenses should be analyzed under New York law. The question of whether a valid arbitration agreement exists at all is an issue of state law. "When contract formation is at issue in an FAA case, we generally apply state law principles." Adams v. Suozzi, 433 F.3d 220, 227 (2d Cir. 2005); see also Colorado-Arkansas-Texas Distrib., L.L.C. v. Am. Eagle Food Prod., Inc., 525 F. Supp. 2d 428, 433 (S.D.N.Y. 2007). Furthermore, "[i]t is clear that questions of contractual validity relating to the unconscionability of the underlying arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA." Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003); see also Dumanis v. Citibank (South Dakota), N.A., No. 07 Civ. 6070, 2007 WL 3253975, at *2 (W.D.N.Y. Nov. 2, 2007); Anonymous v. JP Morgan Chase & Co., No. 05 Civ. 2442, 2005 WL 2861589, at *5 (S.D.N.Y. Oct. 31, 2005) ("In determining whether a generally applicable contract defense

may invalidate an arbitration agreement, a court looks to state law.") (citation omitted).

Because the plaintiff's argument that she did not sign the arbitration agreement goes to whether a valid arbitration agreement was formed, New York law governs the plaintiff's first defense. Because the plaintiff's argument that the arbitration agreement is unconscionable goes to whether the agreement is contractually valid, New York law also governs her second defense.

**B.**

The Court of Appeals for the Second Circuit has apparently looked to the federal substantive law of arbitrability to determine whether a non-signatory to an arbitration agreement can compel a signatory to that agreement to arbitrate a dispute. Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995). As the Court of Appeals explained: "[s]everal courts of appeal have recognized an alternative estoppel theory requiring arbitration between a signatory and a non-signatory . . . . In these cases, a signatory was bound to arbitrate with a non-signatory at the non-signatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the

underlying contract obligations." Id. (internal quotation marks and citations omitted) (alterations in original).

The presence of the choice-of-law provision does not change the result in this case. While some courts have held that a choice-of-law provision governs when a non-signatory seeks to enforce an arbitration agreement against a signatory to that agreement, these are cases where the parties explicitly or implicitly disagree over the law to be applied. See, e.g., Motorola Credit Corp. v. Uzan, 388 F.3d 39, 49-56 (2d Cir. 2004) (finding that choice-of-law provision in arbitration agreement governed whether a non-signatory could compel arbitration against a signatory to the agreement when the parties explicitly disagreed over which law governed). In the absence of a dispute between the parties, most courts dealing with the issue of whether to compel a signatory to arbitrate claims with a non-signatory apply the federal substantive law of arbitrability. See Smith/Enron Cogeneration Ltd. P'ship v. Smith Congenerational Int'l, Inc., 198 F.3d 88, 96 (2d Cir. 1999) ("while the language [of the agreement] might justify looking to Texas law . . ., neither party argued that it applied. Thus, we will apply the body of federal law under the FAA.").[2]

---

[2] Generally, courts in this circuit have held that parties may consent by their conduct to the law to be applied to an issue. See, e.g., Tehran-Berkeley v. Tippetts-Abbett, 888 F.2d 239, 242 (2d Cir. 1989) (holding that "implied consent to use a forum's law is sufficient to establish choice-of-law . . . ."); conduct indicating consent to a given jurisdiction's law may

In this case, although the plaintiff relied on New York law in her analysis of the previous two defenses, both parties relied exclusively on federal law with respect to the non-signatory issue.[3] Furthermore, neither party has expressed a preference for New York law to apply to this issue.[4] Based on their actions, or lack thereof, the parties have implicitly consented to the application of federal law to the plaintiff's non-signatory defense.

Thus, the federal substantive law of arbitrability will govern the plaintiff's non-signatory defense.[5]

---

"consist of the cases cited and relied upon by the parties in their briefs, and their apparent decision not to raise the choice-of-law issue." Schneider v. Canal Ins. Co., No. 98 Civ. 5368, 1999 WL 689476, at *8 (E.D.N.Y. Sept. 1, 1999) (citing Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse, 996 F.2d 506, 513 (2d Cir. 1993).

[3] During oral argument, neither party was certain whether state or federal law applied to the non-signatory issue.  While the plaintiff noted that most of the cases she relied on in her brief had been decided under New York Law, she conceded that both parties had cited and applied essentially the same standard for equitable estoppel in their discussions of the non-signatory issue.

[4] Only the defendant replied to the Court's directive to determine which law applied to this issue. The plaintiff did not make any arguments in response to the defendant's letter, which argued that federal law should apply.

[5] Moreover, there is no reason to believe that the result would be any different under New York law.  While the New York Court of Appeals has yet to address the applicability of equitable estoppel, there is support for applying equitable estoppel as a means of compelling a party to arbitrate with a non-signatory.  See Hoffman v. Finger Lakes Instrumentation, LLC, 789 N.Y.S.2d 410, 415 (Sup. Ct. 2005) (adopting the doctrine of equitable estoppel set out in the Second Circuit's case law on the grounds that the action was consistent with the New York Court of Appeals' well-established policy of promoting "nationwide uniformity" in federal and state arbitration laws) (citations omitted); cf. CDC Capital v. Gershon, 723 N.Y.S.2d 166, 168 (App. Div. 2001) (holding that petitioners failed to bring non-signatories to agreement "within certain of the recognized common-law grounds for enforcing

### III.

The plaintiff first argues that she did not enter into an arbitration agreement. In her affidavit, the plaintiff states she does not remember reviewing the agreement, and she does not believe she signed it. (Ragone Aff. ¶ 13.) The plaintiff also states that the document is suspect on its face because it is not a final draft, and, moreover, she would have remembered signing a document that was not in final draft form. (Ragone Aff. ¶ 17.)

As explained above, the evidence at the hearing clearly established that the plaintiff did sign the Arbitration Agreement. Moreover, the Agreement by its terms plainly covers the claims in the plaintiff's Complaint in this case, and the plaintiff does not contend otherwise. Therefore, the plaintiff's argument that she did not agree to arbitrate is without merit.

### IV.

The plaintiff next argues that, even if the Arbitration Agreement is valid, it is both substantively and procedurally unconscionable. Specifically, the plaintiff contends that the Arbitration Agreement is substantively unconscionable because it

---

an arbitration agreement against a non-signatory" and citing Second Circuit cases).

(a) impermissibly shortens the statute of limitations to ninety days, (b) it requires that attorney's fees must be awarded to the prevailing party, (c) it prevents the plaintiff from appealing the arbitrator's award in court, and (d) it denies the plaintiff some of her rights in court by limiting her discovery rights and eliminating her right to a jury trial. The plaintiff argues that the Arbitration Agreement is procedurally unconscionable because she lacked a meaningful choice when she signed the agreement. She alleges that she was in an unequal bargaining position with the defendant, and she did not have the agreement reviewed by counsel.

Generally, to prevail on an unconscionability claim under New York law, a plaintiff must show that an agreement is both substantively and procedurally unconscionable. See Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988). But "there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." Id. at 829; see also Brower v. Gateway 2000, Inc., 676 N.Y.S.2d 569, 574 (App. Div. 1998). For the reasons set out below, the Court finds that the arbitration agreement is not unconscionable.

**A.**

An agreement is substantively unconscionable if it "is so grossly unreasonable or unconscionable in the light of the mores

11

and business practices of the time and place as to be unenforceable according to its literal terms." Sablosky v. Edward S. Gordon Co., Inc., 535 N.E.2d 643, 647 (N.Y. 1989) (quoting Gillman, 534 N.E.2d at 828) (quotations omitted). "Substantively, courts consider whether one or more key terms are unreasonably favorable to one party." Sablosky, 535 N.E.2d at 647.

### 1.

As an initial matter, the defendants have agreed to waive the statutes of limitations and fee shifting provisions as set out in the arbitration agreement.  (May 8, 2008 Tr. 15-17.) This is consistent with the savings clause in the Arbitration Agreement that provides that in the event that any provision of the Arbitration Agreement is held by a Court to be contrary to law, "the remaining provisions of the Agreement shall remain in full force and effect." (Arbitration Agreement ¶ 7.) Therefore, these provisions are not binding and do not render the Arbitration Agreement unconscionable.  The Arbitration Agreement thus imposes no statute of limitations or attorneys' fees provisions that differ from federal, state or local law. The provisions, which have been stricken, do not render the Agreement substantively unconscionable.  Therefore the Court will examine the agreement as modified in determining whether it is substantively unconscionable.

**2.**

The plaintiff also alleges the Arbitration Agreement is substantively unconscionable because it states, "I understand, acknowledge, and agree that sole and exclusive jurisdiction and venue of any action arising hereunder shall be in the AAA and any ruling made by AAA or the Arbitrator shall be binding and non-appealable." (Arbitration Agreement ¶ 2.) The plaintiff argues that this provision forecloses any judicial review of the arbitration, and this preclusion of judicial review is contrary to the FAA and New York state law. The defendants argue that this provision does not prevent a court from vacating an arbitration award. Furthermore, the provision at issue describes the arbitrator's decision as "binding and non-appealable," and courts have approved other arbitration agreements that described arbitrators' decisions as "final and binding."

The Arbitration Agreement is not substantively unconscionable because it provides for the arbitrator's decision to be "binding and non-appealable." This is not a case where the plaintiff is precluded from seeking judicial review of the arbitration decision. Judicial review occurs pursuant to a motion to vacate an award, which is not precluded under the Arbitration Agreement. New York courts have interpreted similar language as allowing a court to adjudicate a motion to vacate.

See, e.g., Unigard Mut. Ins. Co. v. Hartford Ins. Group, 485
N.Y.S.2d 805, 807 (App. Div. 1985) (adjudicating a motion to
vacate and explaining that the court had the power to review the
arbitration panel's decision even though insurance regulations
described the panel's decision as "final and binding, with no
right of rehearing or appeal") (quotations omitted).

In addition, the plaintiff argues that it would violate New
York law, and would therefore be substantively unconscionable,
if the court were not allowed to vacate an arbitrator's
decision.  The defendants agree, however, that the
"nonappealable" language in the Arbitration Agreement does not
prevent the plaintiff from moving to vacate an arbitration award
in federal court.  Therefore judicial review is not completely
precluded so that a "key term[] [is] unreasonably favorable to
one party."  Sablosky, 535 N.E.2d at 647 (quotations omitted).
Therefore, the provision is not substantively unconscionable.

**3.**

The plaintiff's next substantive unconscionability argument
rests on the following provision in the Arbitration Agreement:

> In the event that any court determines for any
> reason that the Procedure is not binding or
> otherwise allows any litigation regarding a claim
> or portion thereof covered by the Procedure to go
> forward, I agree that (a) the court proceeding
> must be commenced no later than six (6) months
> after the earlier termination of my employment at
> the Company or the date that my claim arose; (b)
> I expressly waive all rights to a trial by jury

```
            in any such litigation; and (c) I understand,
            acknowledge, and agree that any and all discovery
            engaged in by the parties to the court proceeding
            shall be limited to one deposition and one set of
            thirty-five (35) interrogatories with no sub-
            parts.
```

(Arbitration Agreement ¶ 6.)

The plaintiff argues that the Procedure Provision is substantively unconscionable on several grounds.[6]  The plaintiff argues that the limitations on discovery and jury trial are contrary to the Federal Rules of Civil Procedure and federal law.

The plaintiff's objections are moot.  The provision is directed at a situation where the parties proceeded to litigation because the Court invalidated the arbitration procedure.  That is not this case.

It is plainly not the case that simply because an agreement to arbitrate itself eliminates a jury trial or limits the parties' access to discovery, the agreement is substantively unconscionable.  See Bar-Ayal v. Time Warner Cable Inc., No. 03 CV 9905, 2006 WL 2990032, at *16 (S.D.N.Y. Oct. 16, 2006) (holding that arbitration agreement that waives right to jury trial and "eliminates pre-hearing discovery" not

---

[6]  The defendants have agreed not to enforce any statute of limitations provision in the Arbitration Agreement and to invoke the savings clause.  The presence of a statute of limitations provision in Paragraph 6 is therefore not binding and does not render the Arbitration Agreement unconscionable.

substantively unconscionable); see also Ciago v. Ameriquest
Mortgage Co., 295 F. Supp. 2d 324, 331 (S.D.N.Y. 2003)
(implicit waiver of jury trial in arbitration does not render
arbitration agreement unconscionable).  Refusing to compel
arbitration when the Procedure Provision has no effect in this
case would plainly be contrary to New York law, which
incorporates a strong public policy favoring arbitration.  See
Sablosky, 535 N.E.2d at 646.

    The Arbitration Agreement, with the deletion of the
provisions that the defendants have agreed to delete, is not
unreasonable, oppressive, or unfair to the plaintiff.  Thus,
the agreement is not substantively unconscionable.

**B.**

    The plaintiff also argues that the Arbitration Agreement is
procedurally unconscionable.  The plaintiff alleges that she was
in an unequal bargaining position with AVI because she does not
have a higher education degree, lacked business experience, did
not have an attorney review the agreement, and that her
signature on the agreement was a condition of her employment.

    In determining whether an agreement is procedurally
unconscionable, New York courts focus on "whether the party
seeking to enforce the contract has used high pressure tactics
or deceptive language in the contract and whether there is
inequality of bargaining power between the parties."  Morris v.

16

Snappy Car Rental, Inc., 637 N.E.2d 253, 256 (N.Y. 1994)
(quoting Sablosky, 535 N.E.2d at 647).  "The concept of
unconscionability must necessarily be applied in a flexible
manner depending upon all the facts and circumstances of a
particular case."  Matter of Friedman, 407 N.Y.S.2d 999, 1008
(App. Div. 1978).

The Arbitration Agreement is not procedurally
unconscionable.  The plaintiff has failed to show that AVI
engaged in high-pressure tactics or deception in procuring the
plaintiff's signature on the agreement.  First, "[m]ere
inequality in bargaining power . . . is not a sufficient reason
to hold that arbitration agreements are never enforceable in the
employment context."  Gilmer v. Interstate/Johnson Lane Corp.,
500 U.S. 20, 33 (1991); see also Tsadilas v. Providian Nat'l
Bank, 786 N.Y.S.2d 478, 481 (App. Div. 2004) (explaining that
arbitration agreements are enforceable despite an inequality in
bargaining power); Morris, 614 N.Y.S.2d at 366 (refusing to find
an agreement containing an arbitration clause procedurally
unconscionable when the plaintiff was a high school graduate who
attended some college and when the plaintiff was not prevented
from reading the agreement or asking questions about it).

In this case the plaintiff is a high school graduate with
ten years' experience in her field.  She testified at the
hearing and it is clear that the plaintiff is an intelligent and

articulate person.  There is no evidence that the plaintiff was
pressured to sign the Arbitration Agreement.  She could have
asked questions about it and could have taken the employment
documents home to study them and she could have consulted a
lawyer if she chose.

It is undoubtedly true that the plaintiff wanted the job
that she was being offered and that the Arbitration Agreement
was part of the package of employment documents presented to
her.  However, New York courts have not found contracts to be
procedurally unconscionable merely because they were offered on
a "take it or leave it" basis.  See, e.g., Sablosky, 535 N.E.2d
at 647 (finding that it was not procedurally unconscionable for
real estate brokerage firm to include as a condition of
employment an agreement to arbitrate claims); Tong v. S.A.C.
Capital Management, LLC, 835 N.Y.S.2d 881, 889 (Sup. Ct. 2007)
(finding that employment contract containing arbitration clause
was not an adhesion contract because "[the plaintiff] always had
the option to walk away from the job offer"); Greenwald v.
Weisbaum, 785 N.Y.S.2d 664, 667 n.4 (Sup. Ct. 2004) (explaining
that partnership agreement was not procedurally unconscionable
when it was offered as a condition of the partnership).  Here,
the plaintiff does not allege that the defendant threatened her
to sign the agreement and the credible evidence does not show
that she was rushed into signing the agreement.  The fact that

the agreement was offered on a take it or leave it basis, alone, is insufficient to support a finding that the plaintiff lacked a "meaningful choice" in signing the agreement.

Finally, like federal courts, New York courts have a strong public policy favoring arbitration.  See Matter of Smith Barney Shearson Inc. v. Sacharow, 689 N.E.2d 884, 889 (N.Y. 1997); Sablosky, 535 N.E.2d at 646.  If allegations such as these were sufficient to avoid arbitration, then New York's public policy favoring arbitration would be undermined.  For the foregoing reasons, the Arbitration Agreement is also not procedurally unconscionable.

## V.

The plaintiff asserts that she should not be required to submit her disputes with ESPN to arbitration because the Arbitration Agreement was an agreement solely between Ms. Ragone and AVI.  ESPN was not a signatory.  The defendants maintain that the plaintiff must be compelled to submit to arbitration with ESPN under the common law theory of equitable estoppel.

The Court of Appeals for the Second Circuit has "recognized a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement, including equitable estoppel."  Ross v. American Express Co., 478 F.3d 96,

99 (2d Cir. 2007) (citing Thomson-CSF, S.A, 64 F.3d at 779).

"[U]nder principles of estoppel, a *non-signatory* to an

arbitration agreement *may compel a signatory* to that agreement

*to arbitrate* a dispute where a careful review of the

relationship among the parties, the contracts they signed, and

the issues that had arisen among them discloses that the issues

the non-signatory is seeking to resolve in arbitration are

intertwined with the agreement that the estopped party has

signed."  JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 177 (2d

Cir. 2004) (emphasis added) (internal citations and quotation

marks omitted); see also Denney v. BDO Seidman, L.L.P., 412 F.3d

58, 70 (2d Cir. 2005); Contec Corp. v. Remote Solution Co., 398

F.3d 205, 209 (2d Cir. 2005); Choctaw Generation Ltd. P'ship v.

American Home Assurance Co., 271 F.3d 403, 406 (2d Cir. 2001);

Smith/Enron Cogeneration Ltd. P'ship, 198 F.3d at 98; see also

Chase Mortgage Company-West v. Bankers Trust Co., No. 00 Civ.

8150, 2001 WL 547224, at *2 (S.D.N.Y. May 23, 2001) (noting that

"[i]t is permissible for a non-signatory to an arbitration

agreement to compel arbitration of claims brought by a signatory

to that agreement").

    In determining whether a signatory's claims are

"intertwined with the underlying contract obligations," courts

in this district examine whether: (1) the signatory's claims

arise under the "subject matter" of the underlying agreement,

and (2) whether there was a "close relationship" between
defendant signatory and defendant non-signatory.  See Chase-
Mortgage, 2001 WL 547224, at *2-3 (internal citations omitted).

Both parties agree that there are sufficient facts to
support a finding that the plaintiff's hostile work environment
and retaliation claims against ESPN arise from the "subject
matter" of the Arbitration Agreement between the plaintiff and
AVI.  The Agreement states that the employee shall submit "any
and all claims or controversies arising out of [the employee's]
employment or its termination including . . . claims of sexual
harassment; and claims for violation of any federal, state, or
local government law, statute, regulation, and/or ordinance."
(Arbitration Agreement ¶ 1.)  Here, the plaintiff is asserting
claims of sexual harassment and unlawful retaliation under
federal, state and local law against AVI, ESPN, and their
current and former employees.  (Compl. ¶¶ 2-7, et seq.)
Furthermore, the plaintiff's claims also arise out of her
employment and termination, and claims relating to those
subjects must be submitted to arbitration.  In her Complaint the
plaintiff alleges that she was hired by AVI to work as a make-up
artist for ESPN, that she had supervisors at both Atlantic Video
and ESPN, and that upon complaining to her supervisors at both
companies about the alleged harassment, her raise was revoked
and she was ultimately terminated from her job.  (Compl. ¶¶ 13,

17, 115, et seq.)  Thus, the first prong of the equitable estoppel test is satisfied.

The plaintiff argues that there are insufficient facts to establish the requisite close relationship between ESPN and AVI to satisfy the second part of the equitable estoppel analysis. The plaintiff relies on facts present in Chase Mortgage and Choctaw to argue that the "close relationship" prong of the equitable estoppel test is only satisfied when there is either a parent/subsidiary relationship between the defendants, they are both active participants in the contract, or the plaintiff and defendants all have a relationship at the time the contract was formed.  This proposition is plainly in error.  The Court of Appeals for the Second Circuit has expressly stated that "[the] estoppel inquiry is fact-specific . . . and [the court has had] no occasion to specify the minimum quantum of 'intertwined-ness' required to support a finding of estoppel." JLM Indus., 387 F.3d at 178.  In fact, the Court of Appeals recently held that the requisite close relationship for equitable estoppel could be established by the plaintiff's allegations of "substantially interdependent and concerted misconduct" by the signatory and non-signatory defendants.  See Denney, 412 F.3d at 70.  In Denney, the court stated that:

> [h]aving alleged in this RICO action that the Deutsche Bank
> and BDO defendants acted in concert to defraud plaintiffs .
> . . plaintiffs cannot now escape the consequences of those

> allegations by arguing that the Deutsche Bank and BDO
> defendants lack the requisite close relationship, or that
> plaintiffs' claims against the Deutsche Bank defendants are
> not connected to Deutsche Bank's relationship with BDO.

Id. (internal citations omitted).[7]  Furthermore, courts in this
district have stressed that because the touchstone of the
equitable estoppel analysis is "to determine whether the
[plaintiff's] claims against the [non-signatory] are intertwined
with [the signatory's] contract obligations," a key factor in
the relationship inquiry is the "role of the non-signatory when
the misconduct occurred." Chase Mortgage, 2001 WL 547224, at *4;
see also Vaughn v. Leeds, Morelli & Brown, P.C., No. 04 Civ.
8391, 2005 WL 1949468, at *5 (S.D.N.Y. Aug. 12, 2005) (noting
that the plaintiff's "basic premise that Second Circuit
precedent requires that the defendants have a close relationship
independent of the alleged [wrongdoing] is . . . incorrect.").

Here, the facts alleged by the plaintiff plainly support a
finding that ESPN and AVI engaged in substantially
interdependent and concerted misconduct.  The plaintiff alleges,
among other things, that she was hired by AVI specifically to
work as a makeup artist for ESPN (Compl. ¶¶ 13, 14.); that ESPN
is one of AVI's "significant clients," (Compl. ¶ 13.); that
during her employment she was required to both "report to

---

[7] The Court of Appeals remanded the case to the District Court for a
determination of whether the plaintiffs' claims against the non-signatories
were intimately founded in or intertwined with the underlying agreement as to
which the non-signatory sought to compel arbitration.

Atlantic Video" staff and "follow the instructions and directives of ESPN talent and ESPN supervisors on the set," (Compl. ¶ 17.); that she was sexually harassed by ESPN employees during her employment with ESPN/Atlantic Video, (Compl. ¶¶ 18-60, 110, et seq.); that the ESPN employees' offensive and harassing behavior was condoned by her supervisors at both Atlantic Video and ESPN,(Compl. ¶¶ 18, 62-65, et seq.); that she complained on numerous occasions to her supervisors at Atlantic Video and ESPN about the harassment but that both defendants reacted to her complaints with indifference and/or hostility (Compl. ¶¶ 21, 62-68, et seq.); and that AVI and ESPN revoked her raise, other perks, and ultimately terminated her employment in retaliation for her complaints about the hostile work environment. (Compl. ¶¶ 21, 62-68, et seq.)

Based on these allegations, it is clear that the plaintiff's claims of unlawful harassment and retaliation against AVI and ESPN rely on the concerted actions of both defendants and are therefore substantially interdependent. Throughout the Complaint the plaintiff essentially treats the defendants as one single unit: her claims against each defendant are based on a combination of the sexually harassing actions and comments by the ESPN defendants and AVI and ESPN's ambivalent, hostile, and ultimately retaliatory reaction to the plaintiff's complaints about this harassment. (See Compl. ¶ 110.)

("Defendants Atlantic Video and ESPN subjected Ms. Ragone to
persistent and continuous sexual advancements and harassments by
Defendants Paige and Crawford."); (Compl. at ¶ 111.)
("Defendants through their deliberate indifference, created and
maintained an intimidating, hostile, offensive and severely
abusive environment, on the basis of sex . . . ."). It would be
inequitable to allow the plaintiff to treat ESPN and AVI as
intertwined for the purposes of the Complaint, but "escape the
consequences of these allegations by arguing" that there is not
a sufficiently close relationship between the two defendants to
warrant the Court's application of equitable estoppel. Denney,
412 F.3d at 70. Furthermore, the events underlying the
plaintiff's claims against both defendants are so intertwined
that it would be inefficient and unfair for the same witnesses
to appear both in an arbitration proceeding, and then again in a
separate litigation relating to the same matters in dispute.

    Because all of the factors supporting the application of
equitable estoppel are present, ESPN may invoke the Arbitration
Agreement and compel the plaintiff to submit her claims to
arbitration.

**CONCLUSION**

    For the reasons explained above, the motions by AVI and
ESPN to dismiss the Complaint and to compel arbitration are
granted. The Complaint is dismissed without prejudice against

defendants AVI and ESPN.  The plaintiff and defendants AVI and ESPN are ordered to proceed to arbitration in accordance with the Arbitration Agreement.  The clerk is directed to close Docket Nos. 8, 9, and 10.

SO ORDERED.

Dated:    New York, New York
          August 27, 2008

                                          John G. Koeltl
                              United States District Judge

26